

FILED & ENTERED

MAR 14 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:      Guillermo Alvarado, Debtor | Case No.:   2:16-bk-17965-ER<br>Adv. No.:   2:16-ap-01425-ER |
| C.H. Robinson Worldwide, Inc.,<br><br>                                  Plaintiff<br><br>                    v.<br><br>Guillermo Alvarado,<br><br>                                  Defendant | **MEMORANDUM OF DECISION FINDING THAT DEFENDANT'S INDEBTEDNESS TO PLAINTIFF, IN THE AMOUNT OF $68,361.00, IS EXCEPTED FROM DISCHARGE PURSUANT TO §§523(A)(2)(A) AND (A)(4)**<br><br>**TRIAL:**<br><br>Dates:    September 26 and October 30, 2017<br>Time:    9:00 a.m.<br>Location:  Ctrm. 1568<br>       Roybal Federal Building<br>       255 East Temple Street<br>       Los Angeles, CA 90012 |

## I. Introduction

C.H. Robinson Worldwide, Inc. ("Plaintiff") seeks a determination that Guillermo Alvarado ("Defendant") is indebted to it in the amount of $133,338.29, and that such indebtedness is excepted from discharge pursuant to §§523(a)(2)(A) and (a)(4). Trial was conducted on

September 26 and October 30, 2017.[1] The parties filed closing briefs on January 12, 2018. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.[2] For the reasons set forth below, the Court finds that Defendant is indebted to Plaintiff in the amount of $68,361.00, and that such indebtedness is excepted from discharge pursuant to §523(a)(2)(A) and (a)(4).

## II. Background

### A. The District Court Complaint

On September 8, 2015, Plaintiff filed a *Complaint for Damages and Injunctive Relief* (the "District Court Complaint") against Defendant and Global Fresh in the United States District Court for the Central District of California (the "District Court"). The District Court Complaint alleged the following:

> Between August 22, 2014 and October 3, 2014, Plaintiff sold Global Fresh $96,805.00 worth of produce on credit. Global Fresh received and accepted the produce, but failed to pay for the produce, despite Plaintiff's repeated demands. Pursuant to 7 U.S.C. §499(f), Plaintiff filed an administrative reparation complaint with the USDA against Global Fresh. On July 9, 2015, the Secretary of the USDA entered an order (the "USDA Order") for a reparation award in favor of Plaintiff and against Global Fresh in the principal amount of $96,805.00, plus accrued interest. Pursuant to the USDA Order, Global Fresh was required to pay the full award by August 8, 2015, which it has failed and refused to do. Pursuant to PACA, if the reparation award is not paid within the time specified in the USDA Order, Plaintiff is entitled to seek enforcement of the award before the District Court.
>
> Defendant managed, controlled, and directed the purchase of perishable agricultural commodities on credit from Plaintiff on behalf of Global Fresh. Defendant dissipated PACA trust assets by causing proceeds obtained from the resale of the perishable agricultural commodities to be expended for other purposes. In so doing, Defendant breached the fiduciary duties imposed upon him as a PACA trustee.

Based upon the foregoing allegations, the District Court Complaint sought damages of $96,805.00, plus interest and attorneys' fees, against Defendant and Global Fresh.

### B. The District Court's Entry of Default Judgment Against Defendant and Global Fresh

After fourteen attempts to serve the District Court Complaint upon Defendant and Global Fresh failed, Plaintiff sought leave to effectuate service by publication. On January 7, 2016, the District Court authorized Plaintiff to serve Defendant and Global Fresh by publishing the Summons in the *Santa Clarita Valley Signal* once a week for four consecutive weeks. The

---

[1] A transcript of the proceedings occurring on September 26, 2017, is available as Doc. No. 51 and is cited as "Tr. Sept. 26." A transcript of the proceedings occurring on October 30, 2017 is available as Doc. No. 52 and is cited as "Tr. Oct. 30."

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

District Court further ordered Plaintiff to mail the Summons and Complaint to Defendants at 16923 Royal Pines Lane, Canyon Country, CA 91387 (the "Royal Pines Address"). On February 1, 2016, Plaintiff left a copy of the District Court Complaint and Summons at the Royal Pines Address. When Defendant commenced his voluntary Chapter 7 petition on June 15, 2016, he listed the Royal Pines Address as his residence. Plaintiff also caused the Summons to be published in the *Santa Clarita Valley Signal*.

On April 27, 2016, the District Court entered default judgment in favor of Plaintiff (the "District Court Judgment") and against Defendant and Global Fresh. The District Court Judgment, in the total amount of $133,338.29, consists of $96,805.00 in principal, $28,286.53 in interest, and $8,246.76 in attorneys' fees. The District Court found that Defendant was personally liable for Global Fresh's indebtedness because he was the owner, officer, and director of Global Fresh. *See* Minute Order Granting Motion for Default Judgment [Doc. No. 28, Case No. 2:15-cv-07082-DSF-AJW] (Central Dist. Cal. April 27, 2016).

### *C. The Bankruptcy Court's Denial of Plaintiff's Motion in Limine to Prevent Defendant from Contesting the Indebtedness Established by the District Court Judgment*

Plaintiff filed a Motion in Limine seeking to prevent Defendant from contesting the indebtedness established by the District Court Judgment, which the Bankruptcy Court denied. First, the Court found that the District Court Judgment was not entitled to preclusive effect because it was obtained by default:

> "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal common law, a default judgment is not accorded preclusive effect:
>> Another prerequisite to the application of collateral estoppel is that the disputed issue must have been actually litigated in the prior proceeding…. It is true that some types of judgments are not given collateral estoppel effect because the court did not get the benefit of deciding the issue in an adversarial context. In the case of a default judgment, for example, a party may decide that the amount at stake does not justify the expense and vexation of putting up a fight. The defaulting party will certainly lose that lawsuit, but the default judgment is not given collateral estoppel effect.
>
> *United States v. Gottheiner (In re Gottheiner)*, 703 F.2d 1136, 1140 (9th Cir. 1983).
>
> Because the District Court Judgment was obtained by default, the Court cannot give it preclusive effect. Therefore, Defendant is not estopped from contesting the indebtedness established by the District Court Judgment.

Final Ruling Denying Motion in Limine [Doc. No. 41] at 4–5.

Second, the Court found that Plaintiff could not rely upon the District Court Judgment to preclude Defendant from asserting that he did not possess the culpable state of mind giving rise to liability for defalcation under §523(a)(4):

> As the Supreme Court has held, liability for defalcation exists only if Defendant acted with a culpable state of mind with respect to the relevant fiduciary behavior:

Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id.,* § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'willful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.,* § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013).

Collateral estoppel applies only if the issue in the successive proceeding is identical to the issue that was previously litigated. Courts apply four factors to determine whether the issue is identical:

1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
4) how closely related are the claims involved in the two proceedings?

*Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995), *opinion amended on reh'g sub nom. Kamilche v. United States*, 75 F.3d 1391 (9th Cir. 1996).

To enter judgment in Plaintiff's favor, the District Court was required to find that Defendant failed to fulfill his obligations under PACA to hold the proceeds of the sale of the agricultural commodities in trust for Plaintiff's benefit. The District Court was not required to make a finding that Defendant acted with a culpable state of mind with respect to that failure. Therefore, even if the District Court Judgment had not been obtained by default, Plaintiff could not rely upon it to establish that Defendant possessed the culpable state of mind necessary to establish liability for defalcation under §523(a)(4). Subsequent to *Bullock*, courts faced with determining whether a debt is dischargeable by reason of defalcation have been required to make findings regarding the defendant's state of mind. *See, e.g., H. Brooks & Co., LLC v. Yerges (In re Yerges)*, 512 B.R. 916 (Bankr. W.D. Wisc. 2014) (finding that defendant's testimony that he was unaware of his PACA obligations lacked credibility in view of defendant's extensive experience in the grocery industry, and holding that because defendant acted with gross

recklessness with respect to his PACA obligations, he committed defalcation within the meaning of §523(a)(4)).

*Id.* at 6–7.

### D. Facts Established by the Pretrial Order

The Court has entered a Pretrial Order that governs the course of this proceeding. *See* Pretrial Stipulation of the Parties as Amended by the Court (the "Pretrial Order") [Doc. No. 29]. The following stipulated facts have been established by the Pretrial Order:

> At all times relevant to this action, Defendant held a 100% equity interest in Global Fresh, Inc. ("Global Fresh"). Global Fresh was a "dealer," "broker," or "commission merchant" of perishable agricultural commodities within the meaning of the Perishable Agricultural Commodities Act of 1930 ("PACA"), codified at 7 U.S.C. §499a *et seq*. From January 1, 2014 to the last date of business operations, Global Fresh was either licensed or subject to licensing by the PACA Branch of the U.S. Department of Agriculture (the "USDA"). Defendant was the general manager of Global Fresh, controlled Global Fresh's assets, and was the only person with authority to disburse funds on Global Fresh's behalf. Defendant was a "Reported Principal" on Global Fresh's USDA license (License No. 20081030).
>
> At all times relevant to this action, Plaintiff was engaged in the business of selling wholesale quantities of fresh fruits and vegetables in interstate commerce. Plaintiff's PACA license (License No. 19701419) is active and in good standing. Global Fresh has no assets to pay Plaintiff's claims against it.

### E. Relevant Provisions of the Perishable Agricultural Commodities Act (PACA)

Under the Perishable Agricultural Commodities Act of 1930 ("PACA"), codified at 7 U.S.C. §499a *et seq.*, a seller of perishable agricultural commodities holds a statutory trust against all proceeds generated by such commodities, provided that the seller takes actions necessary to perfect the trust. The statute provides, in relevant part:

> (2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents….
>
> (3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to

the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust….

(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C. §499e(c)(2)–(4).

The Ninth Circuit has held that the principal of a produce buyer is personally liable to PACA trust creditors if the principal controls the buyer:

A court considering the liability of the individual may look at "the closely-held nature of the corporation, the individual's active management role" and any evidence of the individual's acting for the corporation.
An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act.... [A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier.

*Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) (internal citations omitted).

### *F. Defendant's Evidentiary Objections*
Defendant asserts that the invoices proffered by Plaintiff to establish that Global Fresh purchased the produce at issue are not admissible. As a result, Defendant asserts, there is no admissible evidence demonstrating that Plaintiff timely delivered to either Global Fresh or Defendant the notices containing the language required by 7 U.S.C. §499e(c)(4). Defendant maintains that, having failed to show that it took the requisite actions to preserve the PACA trust, Plaintiff cannot establish the existence of any of the underlying indebtedness.

## II. Discussion
### *A. Defendant's Evidentiary Objections Are Overruled*
To establish that Global Fresh purchased produce from Plaintiff and that such produce was subject to the PACA trust, Plaintiff introduced two Statements of Account and six invoices (Exhibits 6–13). For the reasons set forth below, all of Defendant's evidentiary objections to the admissibility of Exhibits 6–13 are overruled.

To authenticate Exhibits 6–13, Plaintiff presented the testimony of Ryan Oscarson. Mr. Oscarson has been employed by Plaintiff since May 2011. Tr. Oct. 30 at 54:1–2. His current position, which he has held since 2013, is Regional Category Manager. *Id.* at 54:4–5. As

Regional Category Manager, Mr. Oscarson was responsible for overseeing the procurement and sales of a particular category of produce for an assigned region. *Id.* at 54:20–24. His responsibilities also included collections work. *Id.* at 54:25–55:1. Prior to working as a Regional Category Manager, Mr. Oscarson worked as a Sourcing Representative. *Id.* at 54:7–8. In that capacity, he was responsible for buying and selling produce to various customers. *Id.* at 54:11–17. Mr. Oscarson was responsible for the Global Fresh account. *Id.* at 55:25–56:9.

The Court finds Mr. Oscarson's testimony to be especially credible. Mr. Oscarson described his job responsibilities clearly and succinctly and exhibited a solid understanding of Plaintiff's business practices and internal operating procedures.

The Court finds that Exhibits 6–13 are admissible as records of a regularly conducted activity pursuant to Evidence Rule 803(6). A record is admissible under Evidence Rule 803(6) if:

a) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

b) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

c) making the record was a regular practice of that activity;

d) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

e) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Mr. Oscarson's testimony established that all the criteria for admissibility under Evidence Rule 803(6)(a)–(d) are satisfied. First, Mr. Oscarson testified that he maintained files concerning Global Fresh that contained information regarding the quantities of produce Plaintiff sold to Global Fresh, the price at which the produce was sold, and the date upon which the produce was sold. Tr. Oct. 30 at 90:9–22. As the Regional Category Manager responsible for the Global Fresh account, Mr. Oscarson qualifies as a person with knowledge of Plaintiff's produce sales to Global Fresh. Mr. Oscarson testified that Plaintiff's information technology system would generate invoices, based upon the files that Mr. Oscarson maintained, that in the vast majority of cases would automatically be sent by e-mail to Global Fresh. *Id.* at 94:1–15. Mr. Oscarson testified that in the event the invoices were not automatically sent to Global Fresh by e-mail, they would be sent to Global Fresh by someone in Plaintiff's accounts receivable department, or that he would personally e-mail the invoices to Global Fresh. *Id.* at 94:6–16. Mr. Oscarson testified that Plaintiff's systems would not generate an invoice if a product was not delivered. *Id.* at 60:8–10. Mr. Oscarson's testimony shows that Exhibits 6–13 were records kept in the regular course of Plaintiff's business and that generating those records was a regular practice of Plaintiff's. Finally, Mr. Oscarson qualifies as a custodian of the records within the meaning of Evidence Rule 803(6)(d).

Defendant has failed to demonstrate that the source of the information or the method or circumstances of preparation associated with Exhibits 6–13 indicate a lack of trustworthiness. In support of his contention that Exhibits 6–13 are not trustworthy, Defendant points to Mr. Oscarson's acknowledgment on cross examination that Plaintiff sometimes makes mistakes on its invoices:

> **Question (by Defendant's counsel):** And does C. H. Robinson ever make mistakes in terms of invoicing?
> **Answer:** Yes.

Tr. Oct. 30 at 105:11–12.

Mr. Oscarson's acknowledgment that it is possible for Plaintiff to make invoicing mistakes does not call into doubt the reliability of Exhibits 6–13. Mr. Oscarson did not state that the exhibits in question were mistaken. To the contrary, he testified that he regularly spoke with Carlos, an employee of Global Fresh, regarding Global Fresh's receipt of the produce evidenced by Exhibits 6–13; that Carlos would have advised him had Global Fresh not received the produce; and that Carlos never informed him that Global Fresh had not received the produce. Tr. Oct. 30 at 75:14–19, 93:1–22, and 102:4–17.

Defendant asserts that Plaintiff failed to adequately authenticate Exhibits 6–13. Defendant's objection with respect to authentication is overruled. Mr. Oscarson's testimony showed that Exhibits 6–7 are Statements of Account generated by Plaintiff and that Exhibits 8–13 are invoices generated by Plaintiff.

Defendant further objects that Exhibits 6–13 are not admissible pursuant to Evidence Rule 1002. Evidence Rule 1002 states that an "original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." However, Evidence Rule 1003 provides that a "duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." In *Field v. Trust Estate of Kepoikai (In re Maui Indus. Loan & Fin. Co.)*, 477 B.R. 134, 142 (Bankr. D. Haw.), *order amended on denial of reconsideration,* 483 B.R. 346 (Bankr. D. Haw. 2012), the court admitted copies of checks pursuant to Evidence Rule 1003 after finding no genuine issues as to the original's authenticity or unfairness regarding admission of the duplicates. Having determined the checks were admissible pursuant to Evidence Rule 1003, the *Maui Indus.* court found it unnecessary to examine whether an original was not required under Evidence Rule 1004 (which provides that an original is not required only if it cannot be obtained or if other circumstances apply). As was the case in *Maui Indus.*, there is no indication that the copies presented here are incorrect, and there are no circumstances making admission of the copies unfair. Defendant's objection under Evidence Rule 1002 is overruled.

### *B. With the Exception of the Invoices Admitted as Exhibits 12 and 13, There is No Merit to Defendant's Claim that Plaintiff Failed to Establish that the Invoices Were Delivered to Global Fresh*

A produce seller loses the benefits of the PACA trust if the seller does not timely deliver to the buyer notices containing the PACA trust language as set forth at 7 U.S.C. §499e(c)(4). Here, there is no dispute that the invoices at issue (Exhibits 8–13) contain the required PACA trust language. Defendant's theory is that Plaintiff has failed to establish that those invoices were delivered to Global Fresh within the thirty-day timeframe necessary to preserve the trust benefits. Except with respect to the invoices admitted as Exhibits 12 and 13, Defendant's contentions lack merit. (The Court generally refers to each invoice by its exhibit number—that is, the invoice admitted as Exhibit 12 is denoted as Invoice 12.)

First, Defendant asserts that Plaintiff has not shown that Invoices 8–11 were delivered at all. Defendant is mistaken. Mr. Oscarson, who displayed intimate familiarity with Plaintiff's record-keeping and invoicing procedures, credibly testified that the invoices  were sent to Global Fresh,

either by means of an automated e-mail, by e-mail that he personally sent, or by e-mail sent by another employee in Plaintiff's accounts receivable department. Tr. Oct. 30 at 94:6–16.

On the top left corner of each invoice are the words "Invoice Date:" followed by a date. Mr. Oscarson testified that in the regular course of Plaintiff's business, the invoices would be sent to Global Fresh either on the indicated invoice date or within twenty-four hours thereafter. Tr. Oct. 30 at 95:25–96:2. With respect to Invoices 8–11, each invoice date falls within the thirty-day timeframe necessary to preserve the PACA trust benefits. The Court finds that the products specified on these invoices, and the proceeds thereof, are subject to PACA trust protections.

Defendant argues that the invoices themselves do not contain any indication upon the face of the document that they were delivered. Defendant's argument misapprehends the burden of proof standard. Plaintiff is not required to show delivery of the invoices beyond a metaphysical doubt.

With respect to Invoices 12 and 13, Plaintiff failed to establish that the invoices were provided to Global Fresh within the timeframe necessary to preserve the protections of the PACA trust. Invoice 12 states that payment is due on September 9, 2014. The invoice date is October 27, 2014. Based upon Mr. Oscarson's testimony, Invoice 12 would have been sent to Global Fresh on October 27 or within 24 hours thereafter. The relevant statute provides that the unpaid seller loses the benefits of the PACA trust unless written notice of intent to preserve the trust benefits is provided "within thirty calendar days … after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction." 7 U.S.C. §499e(c)(3). Because Plaintiff did not establish that Invoice 12 was supplied to Global Fresh within thirty calendar days of September 9, 2014, Plaintiff is not entitled to the benefits of the PACA trust with respect to that invoice. Similar to Invoice 12, Invoice 13 contains an invoice date (November 6, 2014) more than thirty days after the payment due date (September 14, 2014). Consequently, Plaintiff has not established that Invoice 13 was timely supplied to Global Fresh.

The Court's findings are summarized in the following table:

| Invoice Admitted as Exhibit No. | Invoice No. | Invoice Date | Amount of Invoice | Finding |
|---|---|---|---|---|
| Exhibit 8 | 216793531 | 9/12/2014 | $8,902.50 | PACA trust applies |
| Exhibit 9 | 216795760 | 9/12/2014 | $23,887.50 | PACA trust applies |
| Exhibit 10 | 217311210 | 9/23/2014 | $22,971.00 | PACA trust applies |
| Exhibit 11 | 218116164 | 10/08/2014 | $12,600.00 | PACA trust applies |
| Exhibit 12 | 219222204 | 10/27/2014 | $3,094.00 | PACA trust does not apply because Plaintiff did not establish that notice of intent to preserve trust benefits was timely provided to Defendant or Global Fresh |
| Exhibit 13 | 219766927 | 11/06/2014 | $25,350.00 | PACA trust does not apply because Plaintiff did not establish that notice of intent to preserve trust benefits was timely provided to Defendant or Global Fresh |
| **Indebtedness to which PACA protection applies** | | | $68,361.00 | |
| **Indebtedness to which PACA protection does not apply** | | | $28,444.00 | |

Plaintiff attempted to establish indebtedness in excess of the amounts set forth in the table above, but the evidence that Plaintiff submitted was inadequate. Plaintiff points to the District Court Judgment to support its contention that Defendant is indebted to it in the amount of $133,338.29. The damages as set forth on the District Court Judgment include the invoice amounts reflected upon Exhibits 12 and 13 as well as interest and attorneys' fees. However, the District Court Judgment was not admitted into evidence. The Court takes judicial notice of the District Court Judgment, but the mere taking of judicial notice is insufficient to establish the indebtedness. For the reasons explained by the Court in its denial of the Motion in Limine, Plaintiff is required to establish its indebtedness before this Court.

Plaintiff also submitted two Statements of Account. However, neither Statement of Account sets forth the PACA trust language. Therefore, Plaintiff cannot rely upon the Statements of Account to show that the PACA trust benefits were preserved with respect to the indebtedness reflected thereon.

### *C. The Indebtedness to Which PACA Protection Applies is Excepted from Discharge Pursuant §523(a)(4)*

Section 523(a)(4) excepts from discharge "any debt for fraud or defalcation while acting in a fiduciary capacity." Defalcation is the "misappropriation of trust funds or money held in any fiduciary capacity" or "the failure to properly account for such funds." *In re Niles*, 106 F.3d 1456, 1460 (9th Cir. 1997). Liability for defalcation requires a "culpable state of mind." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013). A culpable state of mind exists if the fiduciary engages in conduct that he knows is improper, engages in reckless conduct, or

"'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* at 274. To except debts from discharge, Plaintiff has the burden of proof under the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

There is no dispute that Defendant controls Global Fresh. As such, Defendant is personally liable for Global Fresh's breach of its obligations to preserve PACA trust assets for Plaintiff. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).

Plaintiff established that Defendant possessed the culpable state of mind necessary to give rise to liability for defalcation within the meaning of §523(a)(4). Defendant is familiar with PACA; he caused PACA trust language to be placed upon invoices that Global Fresh issued in the course of its own produce business for the purpose of protecting Global Fresh's PACA trust rights. Tr. Sept. 26 at 25:5–7. Thus, Defendant knew that by causing Global Fresh not to pay Plaintiff, he was causing Global Fresh to breach its PACA trust obligations. At the same time as Defendant was facilitating Global Fresh's breach of its PACA trust obligations, he was drawing a monthly salary of approximately $15,000 from Global Fresh. Defendant, as the person in control of Global Fresh, could determine the amount of his salary. Defendant used his salary to purchase, among other things, luxury goods, including an Infiniti QX80 SUV upon which he was required to make monthly payments of $1,406.12. Tr. Sept. 26 at 37:11–14. Defendant's decision to continue drawing a large salary from Global Fresh, at the same time Global Fresh was failing to preserve the PACA trust rights of creditors such as Plaintiff, when Defendant could have reduced his salary and still have maintained a comfortable standard of living, qualifies as defalcation for purposes of §523(a)(4).

### *D. The Indebtedness to Which PACA Protection Applies is Excepted from Discharge Pursuant to §523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge indebtedness "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Supreme Court has recently held that for §523(a)(2)(A) purposes, "actual fraud" includes a debtor's transfer of assets where such transfer "impairs a creditor's ability to collect the debt." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587, 194 L. Ed. 2d 655 (2016). Here, Defendant caused Global Fresh to transfer a substantial salary to himself; those transfers played a role in Global Fresh's inability to satisfy Plaintiff's indebtedness. This conduct qualifies as "actual fraud" for §523(a)(2)(A) purposes.

### *E. Plaintiff's Damages Do Not Include Attorneys' Fees*

Plaintiff asserts that Defendant is liable for $38,286.53 in accrued interest and attorneys' fees as set forth in the District Court Judgment. As noted, the District Court Judgment has not been admitted into evidence and therefore cannot support Plaintiff's claim to attorneys' fees. Tr. Sept. 26 at 5:6–11.

## III. Conclusion

For the reasons set forth above, the Court finds that the PACA trust protections apply to indebtedness of Global Fresh to Plaintiff in the amount of $68,361.00. As the person in control of Global Fresh, Defendant is personally liable for that indebtedness. Also as set forth above, such indebtedness is excepted from Defendant's discharge, pursuant to §523(a)(4) and (a)(2)(A).

The Court will enter judgment consistent with this Memorandum of Decision.

###

Date: March 14, 2018

Ernest M. Robles
United States Bankruptcy Judge